LICKS *v.* STATE, 42 Miss. R., 316.

ILLICIT RETAILING OF INTOXICATING DRINKS.

Under the act of the legislature of November the 4th, 1865, the corporate authorities of all cities and towns in this state have the exclusive right to grant or refuse license to retail vinous and spirituous liquors within their corporate limits. Upon license so granted, the boards of police of the county may order and fix the amount of taxes to be assessed and collected.

Error to the circuit court of Yalobusha county. COTHRAN, J.

*Walthall* and *Golladay*, for plaintiff in error.

The proof established that in January, 1867, the plaintiff in error retailed vinous and spirituous liquors in the incorporated town of Water Valley, in Yalobusha county. It was admitted on the trial by the district attorney, representing the state, that plaintiff in error was regularly licensed by the corporate authorities of Water Valley, to retail in that town for twelve months, from October 11th, 1866. It was admitted by the plaintiff in error that he had never applied to the board of police of the county for license to retail, nor to fix the tax to be paid by him, and that he had paid no such tax or license, none having been demanded or fixed.

We contend that under the "Act to confer additional powers upon all incorporated cities and towns in the state of Mississippi" (acts of 1865, p. 157), the license from the corporate authorities of Water Valley was sufficient for the protection of plaintiff in error, without one from the board of police. From the first section of that act, it seems to have been the intention of the legislature to enlarge the powers of the corporate authorities of cities and towns, as to drinking saloons, billiard-tables, &c., within their limits, and to vest them with full authority for their "control and regulation," including the power to "license or refuse to license" the same.

The proviso to that section makes parties licensed liable for "all state and county taxes which may be imposed from time to time, and such license as shall be ordered and fixed by the respective boards of police of the proper county." While the meaning of this section is somewhat obscure, it certainly, when

considered with the eighth section, transfers from the boards of police to the corporate authorities of cities and towns authority to grant or refuse licenses to retail within their limits. A license so granted, if it have any effect, must amount to an authority to the licensed party to retail in a city or town; just as one granted by the board of police would give him authority to retail elsewhere in a county.

And while the licensed party is *liable* for such license as may be ordered and fixed by the board of police, and can be made to pay the same when ordered and fixed, he is certainly not liable until it is done. In this case, none has been fixed or demanded, and the plaintiff in error in that regard is not in default, there being no duty imposed on him till the board has taken action in. the premises. Suppose the board should never act : would the party who has paid his money to the corporate authorities for the license granted by them, lose what he has paid, without the power, under the law, to avail himself of the privilege ? Suppose it should act six months after the corporate authorities grant the license : would the privilege (which cannot be granted for a longer or shorter period than one year—Code, p. 198, art.. 6) date from the action of the corporate authorities or the board ? If the latter, then it would not expire till twelve months from that date ; and in that event, for the last six months of the time the licensed party would retail in a town or city without license from the corporate authorities, the license granted by the latter having expired twelve months. from *its* date.

It must have been the intention of the legislature to author- ize town and city authorities to grant a party such a license as. would give him the right to retail as soon as granted, taking effect from its issuance ; but the party to pay afterwards taxes imposed, and the license, to the county, *when* ordered and fixed. Any other construction leads to confusion.

*C. E. Hooker*, attorney general, and *W. R. Barksdale*, for the. state.

I. The whole of the evidence offered by defendant in the court below which was excluded, as well as the instructions

asked by him through counsel which *were* refused by the court below, were *excluded* and *refused* upon the legal view that the act of 1865, p. 157, entitled "An act to confer additional powers on cities and incorporated towns," does not repeal or in any manner affect the general retailing act of the Revised Code of 1857, p. 197 *et seq.*

II. The act of 1865, p. 157, Sheet Acts, does not touch or aim to touch the general law of 1857. Rev. Code, p. 197 *et seq.*

It only gives to incorporated towns, in which houses may be licensed by the boards of police, power to regulate, control, and even close up such houses. It is a further restriction on the sale of vinous and spirituous liquor in less quantity than one gallon, the discretion to exercise which is given to the cities and incorporated towns.

III. The act of 1865, purporting only to be "An act to confer on cities and incorporated towns additional powers," in the very first section gives to such cities and towns power to pass ordinances not in conflict with the laws and constitution of the state and of the United States, thus recognizing all state laws on the subject of retailing.

IV. There are no express words of repeal of the law of 1857 contained in the law of 1865. It only repeals the laws in conflict with it; and this would have been done without the last section, since all previous laws so repugnant to it that both could not stand, would have been repealed by a well-known rule of statutory construction.

V. And this brings me to the last proposition to be noticed in the case; that is, whether the law of 1865 is so repugnant to the law of 1857 that both cannot stand, and the latter is therefore repealed.

Repeal by implication is not favored, and if both can be so construed that both may stand, this will be done. Richards v. Patterson, 1 Geo., 583; McAfee v. Southern R. R. Company, 7 Geo., 669.

Between the acts of 1857 and 1865 there is perceived not the slightest repugnance or incongruity. The act of 1865 is a *cumulative* restriction on the sale of vinous and spirituous liquor given to cities and incorporated towns.

If it repeals any part of the act of 1857 it repeals all, and therefore sweeps away all the cautions and wholesome restrictions of that law, which seem so well calculated to keep the *franchise* of selling in the hands of men of approved fitness.

It dispenses with the petition; it dispenses with the petition remaining on file a month; it dispenses with the bond required by Art. 5, p. 198, Rev. Code; it dispenses with the payment of at least $200, the lowest rate at which the board can fix it; and thus the effect of such a construction is to raise the floodgates, and give full sweep to that which the legislature has long regarded as a great source of public mischief—the sale of vinous and spirituous liquor in less quantity than one gallon.

Shackelford, C. J.:

This was a conviction in the circuit court of Yalobusha county, at the April term, 1867, for violating the liquor law of 1857. Revised Code, p. 197 *et seq.*

During the progress of the trial there were various exceptions taken to the rulings of the court excluding from the jury testimony offered by the plaintiff in error; also a number of exceptions were taken, based upon the action of the court in charging the jury, at the instance of the state, and for refusal to grant instructions asked for by the plaintiff in error.

There was a motion for a new trial for the following reasons:

" 1. The court erred in excluding the testimony offered by defendant.

" 2. The court erred in giving the instructions asked for the state.

" 3. The court erred in refusing to give the instructions asked for the defendant.

" 4. The jury found contrary to law and evidence."

This motion was overruled by the court, and exceptions taken to the ruling of the court in refusing the motion, and hence the case is here for revisal on writ of error.

The state proved that Licks, the plaintiff in error, in the incorporated town of Water Valley, in said county of Yalabusha, sold vinous and spirituous liquors to divers persons, in less quantities than one gallon, for money; and that he was not

either a druggist, apothecary, or physician; that this selling oc-
curred in January, A. D. 1867.

The district attorney admitted to the jury that the defendant
Licks was regularly licensed by the corporate authorities of
said town on the 11th day of October, 1866, to retail vinous
and spirituous liquors in said town of Water Valley, for one
year from that date, and that Licks paid therefor the sum of
$250, and waived proof of the admissions.

The plaintiff in error admitted that he had never applied to
the board of county police of said county for license to retail
liquors, &c., in said town, and that he never applied to the said
board to fix any tax to be paid by him, and that he never paid
any such tax or license, and that none had been fixed or de-
manded of him by the said board of police.

We do not consider it necessary here to bring in view the tes-
timony offered by the plaintiff in error, which was excluded by
the court, although made a ground for a new trial, as the princi-
pal part of the same was the legal opinions of counsel, taken by
the plaintiff in error, for his future guidance in the premises,
after he had obtained his license from the municipal authorities
of the town of Water Valley, to show the *bona fides* of his in-
tentions and acts.

We consider that the whole case turns upon the construction
to be placed upon the act of the legislature passed on the 14th
day of November, 1865.  Pamphlet Acts, p. 157–8.

The court gave the following instructions for the state:

" 1. In order to authorize the defendant legally to retail
vinous and spirituous liquors in less quantity than one gallon,
in an incorporated town of less population than two thousand
inhabitants, it is necessary that he should have first made appli-
cation to the board of county police of Yalobusha county for
such license, and that he should have paid such license as was
ordered and fixed by the said board on his application, unless
the board of police had ordered and fixed a license to be paid
by all retailers in the town of Water Valley, where defendant
sold; and then it was a condition precedent to defendant's right
to sell legally in less quantities than one gallon, that he should
have paid the license so ordered and fixed before proceeding to sell.

" 2. The payment of the license ordered and fixed by the board of police was a condition precedent to the defendant's right to sell legally; and if the jury believe from the evidence he sold in less quantities than one gallon, before the payment of such license so ordered and fixed, then the law is for the state, and they will find the defendant guilty as charged."

The giving of these instructions is made the grounds for the first assignment of error.

In support of the legality of these instructions, counsel for the state contend that the act of 1865, above referred to, does not, either by implication or otherwise, repeal the provisions of the Revised Code, p. 197. That it only gives to incorporated towns in which houses *may be licensed by the boards of police*, power to regulate, control, and even close up such houses. And that it is a further restriction on the sale of vinous and spirituous liquors in less quantities than one gallon, the discretion to exercise which is given to the cities and incorporated towns of the state.

It seems that the act of 1865 does not add to or take any powers from the municipal authorities of cities or incorporated towns with a population of two thousand inhabitants. By the act in the Revised Code, p. 197, art. 2, the exclusive right to grant licenses to sell liquor in less quantities than one gallon, within their corporate limits, is given. The act of 1865 enlarges the powers of incorporated towns with a population of less than two thousand inhabitants. The boards of police, by virtue of Art. 3, p. 197, of same act, had, until the passage of the act of November 14th, 1865 (Pamphlet Acts, p. 157-8), *the exclusive right or authority to grant licenses in incorporated towns with* a population of less than two thousand inhabitants.

This act was intended to enlarge the powers of the municipal authorities of incorporated towns with populations of a less number than two thousand. It is true the *people* of incorporated towns with a population less than two thousand had the power, by petitioning the boards of county police of their respective counties, to grant or not to grant licenses within their corporate limits. The corporate authorities of such incorporated

towns had no voice in the granting of such licenses by the boards of police.

The act of 1865, under consideration, confers upon the municipal authorities of incorporated towns, with populations of a less number than two thousand, the absolute power "*to license or refuse to license, as they may judge expedient.*"

This license has to be granted upon the same terms and conditions as are prescribed in the general act of the Revised Code, p. 197–8, art. 5, which regulates the *grant of* licenses in cities with a population of two thousand inhabitants, in police districts of the counties and incorporated towns of the state with populations of less than two thousand. This act of 1865 places incorporated towns of less than two thousand inhabitants in the same position with incorporated towns or cities with a population of two thousand, as to the right to grant licenses within their corporate limits, subject, however, to the *proviso* in the act of 1865.

Can the boards of police now license a retail liquor-house, as provided for in Art. 3, Revised Code, p. 197, in any incorporated town with a population of less than two thousand, without the consent of the municipal authorities of such incorporated town; or can they grant such license at all unless the municipal authorities of such towns first grant a license? We think they cannot.

Such grant of license could only be made where the boards of police have concurrent jurisdiction over the matter with the corporate authorities. It is clear that this act does not give to the boards of police concurrent authority with the municipal authorities of these towns to issue or grant license without the consent of the authorities of said towns embraced by this act. If they cannot grant such license to a party before a license is issued by the municipal authorities of the town, it follows that the exclusive right to grant or refuse the license in the first instance belongs to the municipal authority of the towns. The authority of the boards of police to license at all is entirely dependent upon the will of the corporate authorities, expressed either by a grant or a refusal of license to one of its inhabitants to retail liquor within their corporate limits; if refused, the boards of

police have no power to license. Therefore, we think that so much of Art. 3, Revised Code, p. 197, as is in conflict with the act of 1865 is repealed, and that the boards of police have only the right left them by the act of 1865 to license retail houses in incorporated towns with a population of less than two thousand to the same individuals who are licensed by the municipal authorities. In other words, the exercise of the licensing power left them by the act of 1865 is entirely dependent upon the will of the corporate authorities of incorporated towns; without they license in their corporate limits, the jurisdiction of the board of police is absolutely suspended.

It is insisted by the state that, although the plaintiff in error obtained his license from the municipal authorities of the incorporated town of Water Valley, he could not sell under such license until he obtained a license from the board of county police.

We do not concur with the attorney for the state in this view of the case. We have considered how far these acts of the Revised Code and the act of 1865 are in conflict, and how far they can stand together.

It is true, as contended for, that the recipient of a license under the act of 1865, from the municipal authorities of the incorporated town of a population less than two thousand, is liable, in the language of the act of 1865, for "*such license as shall be ordered and fixed* by the respective boards of police of the proper county." The legislature evidently meant, in the use of this language, to give the boards of police power to fix a sum for the party already licensed by the corporate authorities to pay into the county treasury. Nothing was left to the boards of police except the *discretionary* power to tax or fix a price to be paid in addition to the county for the license of the boards of police. The requisitions provided for in Art. 5, Revised Code, p. 198, had to be first complied with before license could be granted by the municipal authorities of Water Valley to the plaintiff in error. This is presumed to have been done. Then there was nothing left for the board of police of Yalabusha county to do, except to name and assess the sum the plaintiff in error should pay in addition to what he had already paid.

The board of police of said county could have fixed, either before or after the grant of the license by the authorities of Water Valley to the plaintiff in error, the amount he should pay for the additional license; or it could have assessed an amount to be paid by every retailer in Water Valley, acting under the authority of the corporate authorities.

If this had been done, and the amount of the license assessed and fixed by the board of county police of Yalabusha county, at any time previous to the sale of the liquor for which plaintiff in error was indicted and committed, such a state of facts would have made an entirely different case from the one before us.

When such a case arises, it will be time enough then to decide what effect an assessment of an amount to be paid for license to a county, by a board of police, will have upon the rights and liabilities of a party who holds a license from the municipal authorities of an incorporated town of a population of less than two thousand.

It was no fault of the plaintiff in error that the board of police of Yalobusha county failed to fix an amount of money to be paid for a license from that body, to retail liquors, &c., in the town of Water Valley.

Until such license was ordered or fixed by the board of police of Yalobusha county, the plaintiff in error was violating no provision of the General Liquor Law (Revised Code, p. 197), or of the act of November 14, 1865; and consequently was guilty of no offense when he sold the liquor for which he was convicted. By the act of November, 1865, the municipal authorities of incorporated towns have authority "to pass such laws and ordinances not inconsistent with the laws and constitution of the state and of the United States, as they shall deem expedient for the control and regulation of all drinking-saloons within their corporate limits."

The legislature intended by this act to confer absolute and exclusive power upon the people and municipal authorities of incorporated towns, to regulate the issuance of licenses to drinking-saloons, and to provide the prerequisites to be observed before issuance of licenses. In the absence of such municipal legislation, the provisions of Art. 5, Revised Code, p. 198, as we

have before said, is the law regulating the issuance of licenses to retail liquor-houses in incorporated towns and cities. There is no proof in this record showing that any of the prerequisites to the grant of license under Art. 5, Revised Code, p. 198, had been omitted by the plaintiff in error, in the license granted to him on the 11th day of October, 1866.

Then upon what principle is it claimed that the board of county police has the right to require any conditions precedent to be complied with by the plaintiff in error, after he has complied with all the requisitions of the law, and the conditions prescribed by the municipal authorities of Water Valley, before the board should fix the amount to be paid for the county license to him, and before he should be permitted to retail under his license from the authorities of Water Valley.

The power in the act of 1865 is given to the corporate authorities to revoke any license granted by them; this is the power granted in Art. 7, p. 198, Revised Code, of the General Law, to cities and incorporated towns of two thousand inhabitants, and to the boards of police. This power of the board of police is now conferred upon the authorities of incorporated towns of less than two thousand inhabitants. Could a party whose license had been revoked or annulled by the corporate authorities go on and sell or retail liquor under the license granted him by the county police? It would be absurd to maintain that he could. If this could not be done, where can the authority be found in the boards of police giving them the right to control the action of the corporate authorities by prescribing conditions precedent to be observed by them in the grant of licenses? The law and their ordinances they are alone to observe.

If we are right in these views of the statute of 1865 and the General Liquor Law, the boards of police are debarred from all control over the subject-matter in question, in incorporated towns, except so far as to fix the amount to be paid the county for such additional license.

We consider the first assignment of plaintiff in error well taken, and the court erred in giving the second and third instructions asked by the state.

The second assignment is : " The court erred in refusing the first, second, and third instructions asked on behalf of the plaintiff in error."

We deem it unnecessary to consider the first instruction refused by the court, as it refers entirely to the testimony of the plaintiff in error, ruled out by the court, which we have considered unnecessary to notice. The second instruction refused is : " If the jury believe from the evidence that the defendant was regularly licensed to retail by the corporate authorities of the town of Water Valley, and that the same was an incorporated town ; that no tax on him or on retailers generally in said town had been levied, fixed, or assessed by the board of county police of Yalobusha county, then the defendant was authorized to retail during the time covered by such license."

" 3. Under the law in force in October, 1866, and from that time, the corporate authorities of Water Valley had and have authority to license parties to retail in said town ; and when such license is granted, the party so licensed has the right to retail in said town without first obtaining a license from the board of police, but is bound to pay such tax as may be fixed, levied, or assessed by said board." These instructions, we think, contain a correct interpretation of the statute of 1865, in connection with the General License Law of 1857 (Revised Code, pp. 197–8), and should have been given, and it was error to refuse them.

The third assignment of error is, that the court erred in refusing to grant a new trial. We have, in the consideration of the questions previously discussed, disposed of the grounds set forth in the motion for a new trial. The motion should have been granted by the court on all the grounds except the first, upon which we give no opinion, for reasons previously stated.

Many grave questions may possibly arise touching the legality of the "*proviso*" in the act of November 14, 1865, when it comes to be construed in connection with the powers therein previously conferred upon the municipal authorities of incorporated towns of a population less than two thousand ; conflicts of jurisdiction between these authorities may occur, producing results affecting the rights of individuals, &c. We do not

intend, by anything we have said in the discussion of the case
before us, to intimate any opinion upon probable questions that
may arise under the act of 1865, and the General Law of
Revised Code, pp. 197–8, suggested above.

For these reasons the verdict must be set aside and the judg-
ment reversed, and a new trial awarded, and the case remanded.